NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0135n.06

No. 09-2289

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Mar 03, 2011**
LEONARD GREEN, Clerk

MONTEZ KENNEDY,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Plaintiff–Appellant,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀ON APPEAL FROM THE UNITED
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀STATES DISTRICT COURT FOR THE
M. BONEVELLE, Hearings Investigator,⠀)⠀⠀WESTERN DISTRICT OF MICHIGAN
in their individual and official capacities,⠀)
et al.,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Defendants–Appellees.⠀⠀⠀⠀)

Before: MARTIN, GIBBONS, and KETHLEDGE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff–appellant Montez Kennedy appeals the district court's decision dismissing his 42 U.S.C. §1983 complaint for failure to state a claim upon which relief can be granted and the district court's subsequent order denying his motion for reconsideration. On appeal Kennedy makes three arguments. First, Kennedy argues that he was not required to plead all of the particulars of a denial of access to the courts claim. Second, Kennedy states that he suffered adverse consequences in retaliation for asserting his rights and sufficiently pled facts to show this retaliatory action caused more than a *de minimis* injury. Third, Kennedy asserts that he was not required to plead that post-deprivation remedies were unavailable in order to make a claim of denial of property without due process. For the reasons that follow, we reverse the district court with respect to Kennedy's access to the courts and retaliation claims and remand to the

district court to direct service of process, but we affirm dismissal of the procedural due process claim.

I.

Montez Kennedy is a state prisoner in Michigan who filed this civil rights action pursuant to 42 U.S.C. §1983 against defendants Hearings Investigator M. Bonevelle, Warden David Bergh, Sergeant T. Lee, Hearings Officer L. Maki, and Hearings Assistant Matthew D. Young.

Kennedy's case stems from complaints that he filed regarding the conditions at the Alger Maximum Correctional Facility ("Alger"). Kennedy alleges that he "immediately noticed departmental and constitutional violations" upon entering Alger, and when he verbally complained, these complaints "enraged [the staff] . . . and they . . . treat[ed] [him] with hostility." Eventually, Kennedy formalized his complaints and began to offer "legitimate, appropriate written complaint[s]," thus beginning a deluge of letters and administrative complaints, which drew a reaction from prison officials.

Kennedy alleges that while he was making these complaints he met with hostility from the staff. Specifically, he alleges that the staff made a false report that his cell was not in compliance with regulations so as to "set the ground work for the deprivation [of his legal property]" and that the staff filed a negative evaluation of him in retaliation for all of his complaints. Kennedy admits that the warden sent officers to investigate one complaint—that he was improperly denied winter boots—but he insists that after this investigation the "staff became enraged even more and the hostility toward plaintiff deepened."

No. 09-2289
*Kennedy v. Bonevelle, et al.*,

Kennedy also accuses Alger officials of conspiring with Bonevelle, the Hearings Investigator, to deprive him of his legal materials and thereby limit his complaints. According to Kennedy, he was told to prepare for a "Legal Hearing," which would determine whether he had possession of excessive legal materials. Kennedy expected to be interviewed by Bonevelle prior to the hearing, but that interview never took place; instead, Bonevelle came to the cell while Kennedy was away and left a note to create false evidence that she had done her duty. When Kennedy eventually had his excessive legal materials hearing, he was denied the chance to present evidence on his own behalf. Then, his materials—four duffel bags' worth—were taken from him for several days. Although Kennedy requested that the duffel bags be sealed, his request was denied. When the bags were eventually returned, numerous legal documents were missing, thus limiting his ability to bring multiple lawsuits.

Kennedy filed a §1983 action in the Western District of Michigan and raised three constitutional claims[1]: (1) denial of access to the courts, (2) retaliatory actions against him based upon his exercise of his constitutional rights, and (3) denial of due process because of the illegal seizure of his legal materials. The district court dismissed Kennedy's action for failure to state a claim pursuant to 28 U.S.C. §§1915(e)(2), 1915A, and 42 U.S.C. § 1997e(c). Pursuant to 28 U.S.C. § 1915A, the district court issued its dismissal *sua sponte*, without any motion or response from the government. Kennedy now appeals that dismissal to this court.

---

[1] The first two constitutional claims were addressed in the district court's first order, entered January 5, 2009. The third issue was addressed in the order on Kennedy's motion to alter or amend and was entered August 28, 2009.

II.

We review *de novo* a district court's decision to dismiss under 28 U.S.C. §§ 1915(e), 1915A, and 42 U.S.C. § 1997e(c). *Grinter v. Knight*, 532 F.3d 567, 571–72 (6th Cir. 2008). In assessing a complaint for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accept his factual allegations as true, and determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation and citation omitted); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying the *Iqbal* standard to claims under 28 U.S.C. §§ 1915(e) and 1915A). The pleadings of *pro se* petitioners, such as Kennedy, are construed liberally and are held to a less stringent standard. *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)).

III.

The district court erred in dismissing Kennedy's access to the courts claim. Dismissal for failure to state a claim is proper if the complaint does not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Iqbal*, 129 S. Ct. at 1949. We construe the complaint in the light most favorable to Kennedy and find that his access to the courts allegations include facts that would entitle him to relief.

Prisoners' right of access to the courts includes being afforded the tools to "attack their sentences, directly or collaterally, and . . . to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). Because Kennedy's legal complaints against the Alger officials

challenge "hazardous practices" and the conditions of his confinement,[2] he has a right of access to the courts. Kennedy pleads that the seized legal materials would have been used to bring lawsuits alleging excessive force, denial of substantive due process, denial of procedural due process, cruel and unusual punishment, and denial of equal protection. We therefore find that Kennedy has pled a denial of the legal tools he needs to raise matters worthy of constitutional protection.

The district court, citing an unpublished decision of this court, held that Kennedy could not show any actual injury to his pursuit of a legal claim because he did not explain why he is unable to replicate the seized documents. *Kennedy v. Bonevelle*, No. 2:08-cv-197, 2009 WL 33467 at *3 (W.D. Mich. Jan. 5, 2009) (citing *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685 at *1 (6th Cir. Dec. 2, 1994) (unpublished opinion)). We disagree. Specific facts are not required by a prisoner at the pleading stage, and *Vandiver*, an unpublished opinion, is not binding on this court and cannot be used to defeat Kennedy's access-to-the-courts claim. We have held that for a prisoner to prevail on an access to the courts claim the prisoner "must plead and prove prejudice stemming from the asserted violation. . . . Plaintiffs [must] allege [a] litigation-related detriment." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Kennedy's allegations, if proved, would establish a litigation-related detriment that has prejudiced his ability to bring the cases he wishes to bring. Accordingly, he has stated a claim upon which relief can be granted. We therefore remand to the district court to direct service of process on Kennedy's access-to-the-courts claim.

---

[2]Among the complaints are challenges to his "*pro forma* and perfunctory segregation placement," a request to receive winter boots, complaints about the "hazardous practices of [Alger] officers and nurses," and an allegation that guards were reading his mail.

IV.

The district court also erred in dismissing Kennedy's retaliation claim. To set forth a First Amendment retaliation claim, a plaintiff must show that: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). Although the district court found that the adverseness inquiry, "an objective one," worked to defeat Kennedy's claim because "[t]he seizure of some of his voluminous legal material is not sufficiently adverse to deter a person of ordinary firmness from filing grievances," *Kennedy*, 2009 WL 33467 at *4, we disagree. Kennedy has pled sufficient facts to survive summary dismissal.

In *Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002), a prior ruling of this court involving a prisoner who had his legal papers confiscated, we established that whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness is a question of fact. *Id.* at 603. The *Bell* panel held that "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law" and that "'while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out *only inconsequential actions*'. . . . Thus, unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Id.* (quoting *Thaddeus-X*, 175 F.3d at 398) (emphasis in original). *Bell* therefore stands for the proposition that only *de minimis* violations should be dismissed as a matter of law; in general,

6

the adverseness question should survive the pleading stage. The *Bell* court also cited with approval decisions from other circuits where seizure of legal documents, often along with other violations, was found to justify a First Amendment retaliation claim. *Id.* at 604 (citing *Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996); *Green v. Johnson*, 977 F.2d 1383, 1389–91 (10th Cir. 1992); *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986); *Hall v. Sutton*, 755 F.2d 786, 787–88 (11th Cir. 1985)).

Because the plaintiff in *Bell* had legal documents seized and because *Bell* dealt with a summary judgment standard, which is even less friendly to plaintiffs than the pleading standard at issue here, Kennedy's case should survive the adverseness inquiry. Kennedy alleges that prison officials treated him with hostility, left false notes in his cell, and seized duffel bags' worth of legal materials, thereby preventing him from filing legitimate grievances. We do not decide whether these actions would deter a person of ordinary firmness, but we do find that these violations are more than *de minimis* violations and should be reviewed by a fact-finder, not dismissed as a matter of law. Accordingly, we remand to the district court to direct service of process as to Kennedy's retaliation claim.

V.

The district court did not err in dismissing Kennedy's procedural due process claim. We have held that "a procedural due process claim will not be stated unless the plaintiff pleads and proves that his available state remedies are inadequate to redress the wrong." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). Citing *Parratt v. Taylor*, 451 U.S. 527 (1981), the *Copeland* court emphasized that § 1983 procedural due process claims may be dismissed if there is an adequate post-

deprivation remedy and (1) the deprivation was unpredictable or random, (2) predeprivation process was impossible or impracticable, and (3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty. 57 F.3d at 479. Kennedy's pleadings charge the Alger officials with taking unauthorized action; therefore he has not pled that these actions were done "in accordance with an established state procedure." *Id.* The *Parratt* doctrine thus applies, and Kennedy must plead inadequate post-deprivation remedies. The district court correctly found that Kennedy has not pled inadequacy of post-deprivation remedies and that such remedies do exist and are adequate.

On appeal, Kennedy restates that he has pled a § 1983 claim and says that he "will be able to evidence the total denial of post state remedies at the summ. judg. [sic] state of the case. But he's not required to prove or even plead it now." [(Appellant's Br. at 23.)] Kennedy does not challenge the district court's correct *Parratt* doctrine ruling; thus he fails to make an argument on appeal.

Kennedy also argues that his appeal after his excessive legal materials hearing "was done perfunctory and pro forma, thereby denying appellant a liberty interest created by state statute . . . . This claim of appellants [sic] was never addressed by the [district court]." [(Appellant's Br. at 24.)] While the district court never explicitly addressed this second procedural due process claim, it fails for the same reason as the first—Kennedy has other state avenues to appeal and file grievances, any of which may lead to return of or compensation for the loss of his legal materials. Kennedy has not pled a denial of due process in accordance with established state procedures; he therefore fails to state a procedural due process claim.

VI.

For the foregoing reasons, we reverse the district court with respect to Kennedy's access to the courts and retaliation claims and remand to the district court to direct service of process, but we affirm dismissal of the procedural due process claim.